## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                    **Case No. 8:20-mj-1518-AEP**

**MUHAMMED MOMTAZ AL-AZHARI**

_____/

### MOTION TO REVOKE DETENTION ORDER

**NOW COMES** Defendant, Muhammed Momtaz Al-Azhari, by and through undersigned counsel, and moves this Court to revoke the magistrate judge's detention order under 18 U.S.C. § 3145(b).[1]

### MEMORANDUM OF LAW

### BACKGROUND

The Government filed a criminal complaint in this case alleging that Mr. Al-Azhari attempted to provide material support to a foreign terrorist organization (FTO), in violation of 18 U.S.C. § 2339B.  Mr. Al-Azhari was arrested, and a magistrate judge held an initial appearance, preliminary hearing, and detention hearing, on May 27, 2020.  (Doc.

---

[1] To the extent Fed. R. Crim. P. 59 applies to a magistrate judge's detention order, Mr. Al-Azhari also hereby objects to the order under that rule.  *See United States v. Doby*, 928 F.3d 1199, 1204-1207 (10th Cir. 2019) (holding that Rule 59 does not apply to a magistrate judge's order under the Bail Reform Act); *but see United States v. Tooze*, 236 F.R.D. 442, 443-45 (D. Ariz. 2006) (coming to the contrary conclusion).

13).  After the magistrate judge found probable cause that Mr. Al-Azhari committed the offense at the preliminary hearing, the Government moved to detain him under 18 U.S.C. § 3142(f)(1)(A) and (f)(2).  (R. at 58, 60-61) ("R." citations refer to the transcript of these proceedings).

The complaint is accompanied by a 62-page affidavit executed by Federal Bureau of Investigation (FBI) Special Agent Cynthia Hazel. The evidence relied upon by the Government at the detention hearing, Agent Hazel's testimony and a limited proffer of other evidence, was largely redundant with the affidavit.  To summarize the Government's allegations, the Islamic State in Iraq and al-Sham (ISIS) is a well-known FTO that has committed atrocities and terrorism.  Its propaganda encourages its followers who cannot join in its military operations overseas to engage in "lone wolf" attacks where they live.

Mr. Al-Azhari is a United States citizen.  According to the Government's multi-level hearsay evidence, while living in Saudi Arabia, Mr. Al-Azhari was convicted of "possessing extremist propaganda," "holding extremist views," and attempting to join an

2

organization called Jaysh al-Islam.  (R. at 33-34).  Jaysh al-Islam is a rebel group fighting in the Syrian civil war against tyrant Bashar Assad's government forces.  (Doc. 18-1).  At least at the time of Mr. Al-Azhari's detention in Saudi Arabia, Jaysh al-Islam was supported by the U.S. State Department and the very country that detained Mr. Al-Azhari, Saudi Arabia.  (*Id*.).  Mr. Al-Azhari explained to the Pretrial Services Officer that the Saudis tortured him while he was detained, a fact confirmed by a relative.  (Pretrial Serv. Rep. at 3).  Mr. Al-Azhari is 23 years old now; he was a child when he was first imprisoned and tortured.  (*See id*. at 2).

The FBI began surveilling Mr. Al-Azhari from the moment he returned to the United States, after he was removed from Saudi Arabia, in 2018.  (R. at 10).  The Government's presentation included no evidence of anything of note until April 20, 2020.  Then, the Government's presentation indicated Mr. Al-Azhari attempted to buy a legal gun part on Ebay.  (Doc. 5, p. 1; R. at 10-11).  The FBI posed as the seller and, for a time, discussed with him the sale and barter of

firearms.  After Mr. Al-Azhari was arrested for carrying a concealed pistol, he called off the deal.  (Doc. 5, p. 21).

The Government offered that Mr. Al-Azhari made internet purchases it says are consistent with the creation of a silencer, and that he expressed unorthodox views to co-workers, including statements in support of the 9/11 attacks and Omar Mateen, who committed a mass shooting at the Pulse nightclub in Orlando, Florida.  The Government also offered that Mr. Al-Azhari drove to Honeymoon Island beach and local FBI headquarters to scout those locations as targets (so it says), and to the Pulse nightclub.  The Government offered that Mr. Al-Azhari consumed ISIS propaganda and news, and made a video on his phone playacting a terrorist scene.  (R. at 9, 16-18).

Lastly, the Government offered that it introduced Mr. Al-Azhari to a paid informant, who discussed ISIS and jihad with Mr. Al-Azhari.  In speaking to this informant, on May 22, 2020, the Government offered that Mr. Al-Azhari said, "I want to be ISIS."  (R. at 41).  The Government also offered that, on May 23, 2020, Mr. Al-Azhari, in discussing jihadist beliefs with the informant, said, "I am ISIS."

However, Agent Hazel agreed that Mr. Al-Azhari did not join ISIS "overnight." (R. at 41). The Government offered that the paid informant and Mr. Al-Azhari discussed a broad-ranging array of acts they could commit with guns, including robbing banks, killing police officers, and committing an attack similar to Mateen's. (R. at 63-64). Agent Hazel testified that the informant offered to facilitate the sale to Mr. Al-Azhari of a pistol and silencer, and, when the sale was consummated, the FBI arrested Mr. Al-Azhari. (R. at 23).

On cross-examination Agent Hazel admitted that Mr. Al-Azhari never attempted to provide any currency, monetary instruments, financial securities, lodging, training, expert advice or assistance, safe houses, false identification documents, communications equipment, facilities, weapons, lethal substances, explosives, or transportation to ISIS. (R. at 36-39). Agent Hazel testified that Mr. Al-Azhari attempted to provide only "personnel," in the form of himself, to ISIS. (R. at 39).

However, Agent Hazel testified that Mr. Al-Azhari acted independently of ISIS:

> Q. You describe Mr. Al-Azhari as a lone wolf terrorist, correct?

5

A. Yes.

. . . .

Q. All right. And what you mean by that, at least for example, is he wasn't sent here by ISIS, correct?

A. Correct.

Q. And he wasn't trained by ISIS?

A. No.

Q. He wasn't under ISIS's control?

A. No.

Q. He wasn't taking direction from ISIS?

A. No.

Q. He didn't organize anything for ISIS?

A. Well, he – it appears he recruited [the informant] to help him in his attack on behalf of ISIS.

Q. Okay. But he didn't do that at the direction of anyone from ISIS, correct?

A. Correct.

Q. All right. He didn't supervise anything for ISIS?

6

A.  No.

Q.  He didn't direct operations for ISIS?

A.  No.

Q.  And certainly you think he – he sympathized with ISIS, correct?

A.  Yes.

Q.  And you think he wanted to advance those goals, correct?

A.  Yes.

. . . .

Q.  All right.  And as a lone – but as a lone wolf, he -- he acted independently of ISIS, correct?

A.  Yes.

Q.  All right.  And he was just seeking to achieve their -- their goals on his own?

A.  Yes.

(R. at 39-41).

The pretrial services report showed that Mr. Al-Azhari has no criminal history outside of his "conviction" in Saudi Arabia for "having extremist views" and the like.  All of his immediate family lives in the

7

United States, and almost all of them in the Tampa area.  The Defense

proffered that Mr. Al-Azhari's father, who lives in Temple Terrace,

Florida, would allow Mr. Al-Azhari to live in his home, would co-sign an

appearance bond, would act as a third party custodian, and would

facilitate location monitoring.  (R. at 69).  The Defense also suggested a

search condition, that Mr. Al-Azhari be required to forfeit his passport,

and standard conditions of release, which would include a condition

that he not possess any firearm.  (R. at 69).

The magistrate judge found that Mr. Al-Azhari is a flight risk,

based on the severe penalty he faces if convicted.  (R. at 73).  She

further found that there is probable cause that Mr. Al-Azhari

committed the offense of attempting to provide material support to an

FTO.  (Doc. 17, p. 1).  Based on that finding, she applied a rebuttable

presumption that no condition or combination of conditions will

reasonably ensure the appearance of Mr. Al-Azhari as required, or the

safety of the community.  (*Id*.).  Citing the Government's evidence, the

magistrate judge found that Mr. Al-Azhari failed to overcome the

presumption, and so ordered his detention.  (*Id*.).

## ARGUMENT

The magistrate judge erred in finding that a statutory presumption arises, because there is not probable cause that Mr. Al-Azhari committed the offense of attempting to provide material support to an FTO.  The Government presented no evidence in any form that Mr. Al-Azhari attempted to work under the direction or control of ISIS.  Further, even if a statutory presumption does arise, the evidence against Mr. Al-Azhari is so weak that the presumption is easily rebutted.  Mr. Al-Azhari's history and circumstances further rebut any presumption.  Given the evidence, the Government failed to prove that no combination of conditions will reasonably assure Mr. Al-Azhari's appearance and the safety of the community.

A judicial officer may hold a detention hearing if the Government makes certain showings, two of which are pertinent here.  The judicial officer must hold a hearing in a case that involves "a serious risk that [the defendant] will flee."  18 U.S.C. § 3142(f)(2)(A).  Further, the judicial officer may hold a detention hearing in a case that involves certain offenses, including an offense listed in 18 U.S.C. §

2332b(g)(5)(B) that carries a maximum term of imprisonment of ten years of more.  18 U.S.C. § 3142(f)(1)(A).  That list includes the offense charged in this case, providing or attempting to provide material support to an FTO under 18 U.S.C. § 2339B.  18 U.S.C. § 2332b(g)(5)(B).

If the Government makes either of these two showings, the judicial officer must determine "whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(f).  In certain cases, a rebuttable presumption arises that no combination of conditions will suffice.  Pertinent to this case, such a presumption arises "if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed." 18 U.S.C. § 3142(e)(3)(C).[2]

---

[2] The district court's review of the magistrate judge's detention order is de novo. *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987).  The Court must decide this motion "promptly."  18 U.S.C. § 3145(b).

## I.  The Government failed to present evidence sufficient to create a presumption against release.

Whether the magistrate judge erred in applying the statutory presumption turns on whether the Government showed probable cause that Mr. Al-Azhari committed the charged offense, an attempted violation of 18 U.S.C. § 2339B.  The Government failed to show probable cause because it failed to present any evidence that Mr. Al-Azhari attempted to work under ISIS's direction and control, or to manage, supervise, or otherwise direct ISIS's operations.  Indeed, Agent Hazel affirmatively disclaimed in her testimony that the Government possesses any such evidence.  Accordingly, the magistrate judge erred by applying the presumption.

The statute at issue provides:

> Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or life.  To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization . . ., that the organization has engaged or engages in terrorist activity . . ., or

11

that the organization has engaged or engages in
terrorism . . . .

18 U.S.C. § 2339B(a)(1).  "The term 'material support or resources' has

the same meaning given that term in section 2339A (including the

definitions of 'training' and 'expert advice or assistance' in that

section) . . . ."  18 U.S.C. § 2339B(g)(4).  Section 2339A, in turn,

provides:

> (1)   the term "material support or resources"
> means any property, tangible or intangible, or
> service, including   currency   or   monetary
> instruments   or   financial   securities,   financial
> services,  lodging,  training,  expert  advice  or
> assistance,  safehouses,  false  documentation  or
> identification,   communications   equipment,
> facilities, weapons, lethal substances, explosives,
> *personnel (1 or more individuals who may be or*
> *include   oneself)*,   and   transportation,   except
> medicine or religious materials;
>
> (2)   the term "training" means instruction or
> teaching designed to impart a specific skill, as
> opposed to general knowledge; and
>
> (3)  the term "expert advice or assistance" means
> advice  or  assistance  derived  from  scientific,
> technical or other specialized knowledge.

18 U.S.C. § 2339A(b) (emphasis added).

Section 2339B continues:

> **Provision of Personnel.** – No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.

18 U.S.C. § 2239B(h).[3]

Mr. Al-Azhari is charged with an attempt under this statute. "To establish an attempt as a crime, proof is required: (1) that the defendant intended to commit the underlying criminal offense with the requisite *mens rea*, and (2) that the defendant engaged in conduct which constituted a substantial step toward the commission of that crime and which strongly corroborates the defendant's criminal intent." *United*

---

[3] Subsection (h) does not provide an affirmative defense that must be proved by the defendant; the burden is the Government's. *United States v. Shafi*, 252 F. Supp. 3d 787, 792-93 (N.D. Cal. 2017); *United States v. Pugh*, No. 15-CR-116 (NGG), 2015 WL 9450598, at *11 (E.D.N.Y. 2015).

*States v. Rothenberg*, 610 F.3d 621, 626 (11th Cir. 2010) (citations omitted).

Applying the *Rothenberg* formulation to § 2339B, the Government had to show probable cause that (1) Mr. Al-Azhari intended to provide himself or someone else to work under ISIS's direction or control, or to organize, manage, supervise, or otherwise direct the operations of ISIS, knowing that ISIS is a designated FTO, engages in terrorist activity, or engages in terrorism, and (2) Mr. Al-Azhari engaged in conduct that constituted a substantial step toward providing himself or someone else to work under ISIS's direction or control, or to organize, manage, supervise, or otherwise direct the operation of ISIS, that strongly corroborated his intent.  *See* 18 U.S.C. §§ 2339B(a)(1), (h), 2339A(b); *Rothenberg*, 610 F.3d at 626.  Conversely, if there is no probable cause that Mr. Al-Azhari intended to provide himself or someone else to work under ISIS's direction or control, or took any step toward doing so, the evidence is lacking, *even if* Mr. Al-Azhari sympathized with ISIS and attempted to advance the organization's goals independently, through attacks or otherwise.  *See* 18 U.S.C. § 2339B(h).

Eleventh Circuit cases considering § 2339B illustrate the point. *See United States v. Suarez*, 893 F.3d 1330, 1334-35 (11th Cir. 2018); *United States v. Augustin*, 661 F.3d 1105, 1119-22 (11th Cir. 2011).  In *Suarez*, the defendant coordinated directly with individuals he believed to be members of ISIS in order to acquire a bomb, and accepted the bomb while reiterating his plan to detonate it on a crowded beach. *Suarez*, 893 F.3d at 1334-35.  On these facts, the court held that the evidence was sufficient to sustain a conviction for attempting to violate § 2339B.  *Id.*  Suarez was guilty because he attempted to make himself "personnel" of ISIS by placing himself under the organization's direction and control to conduct an attack, and only failed to do so because the people with whom he was interacting were not really ISIS members.

Similarly, in *Augustin*, the defendants were charged with conspiracy to violate § 2339B.  They met with an FBI informant who was posing as an Al Qaeda operative and liaison to that organization. The defendants discussed various attacks they would commit for the organization, and conducted reconnaissance and intelligence gathering at planned targets.  At the informant's demand, the defendants took a

15

prepared oath of allegiance to Al Qaeda in preparation for the attacks. The court affirmed the convictions, but noted that the evidence was "far from overwhelming." *Augustin*, 661 F.3d at 1119-22.

Thus, as *Suarez* and *Augustin* teach, to be guilty of an inchoate crime of attempt or conspiracy under § 2339B, the defendant must in some way endeavor to place himself or someone else under the FTO's direction and control.  Generally, this will involve some level of communication between the defendant and an agent or perceived agent of the FTO, as in *Suarez* and *Augustin*, or some thwarted effort to join the FTO on the battlefield overseas, *see, e.g., United States v. Mehanna*, 735 F.3d 32, 43-46 (1st Cir. 2013) (affirming conspiracy conviction where the defendant traveled to Yemen to join an al Qaeda training camp as a recruit); *United States v. Farhane*, 634 F.3d 127, 150 (2d Cir. 2011) (affirming conviction where the defendant took an oath to act as a battlefield doctor for the FTO).  Out-of-circuit cases are in accord on this point.[4]

---

[4] *See United States v. Wright*, 937 F.3d 8, 26-27 (1st Cir. 2019); *United States v. Kaizu*, 559 F.Appx. 32, 37 (2d Cir. 2014); *United States v. Hendricks*, 950 F.3d 348, 353 (6th Cir. 2020); *United States v. Jones*, 383 F.Supp.3d 810, 816 (N.D. Ill. 2019); *see also Hosseini v. Nielson*, 911 F.3d 366, 376 (6th Cir. 2018).

Perhaps because of the clarity of subsection (h)'s plain language,
*no* case has ever sanctioned a prosecution under § 2339B where the
defendant allegedly planned an attack in the United States on the basis
of sympathy to an FTO, but without any direction or control from the
FTO.[5]  The Supreme Court upheld § 2339B against a constitutional
vagueness challenge in part because of subsection (h)'s clarification that
the statute does not capture independent acts done outside of the FTO's
direction and control.  *Holder v. Humanitarian Law Project*, 561 U.S. 1,
23 (2010).  Expanding on this point, the Court explained:

> "[S]ervice" similarly refers to concerted activity,
> not independent advocacy.  See Webster's Third
> New International Dictionary 2075 (1993)
> (defining "service" to mean "the performance of
> work commanded or paid for by another:  a
> servant's duty:  attendance on a superior"; or "an
> act done for the benefit or at the command of

---

[5] When pressed for analogous cases by the magistrate judge, the Government
mentioned four:  *United States v. Osmakac*, *United States v. Saipov*, *United States v.
Al-Arian*, and the case of Omar Mateen.  (R. at 48-50).  Mr. Osmakac was not charged
under § 2339B.  *United States v. Osmakac*, 868 F.3d 937, 947-48 (11th Cir. 2017).
The *Saipov* case is still pending trial.  *United States v. Saipov*, No. 1:17-cr-722-VSB
(S.D.N.Y. 2017).  The defendants in *Al-Arian* were charged under § 2339B, but the
jury was not charged that it could consider "personnel" as a basis for providing
material support.  *United States v. Al-Arian*, No. 8:03-cr-77-T-30-TBM (Doc. 1431).
Omar Mateen was not prosecuted because he was killed.  Mr. Mateen's wife was
prosecuted for her husband's attack, and was acquitted.  *United States v. Salman*,
No. 6:17-cr-18-Orl-40KRS (Doc. 336).

another").    Context confirms that ordinary
meaning here.  The statute prohibits providing a
service "*to* a foreign terrorist organization."    §
2339B(a)(1) (emphasis added).  The use of the word
"to" indicates a connection between the service and
the foreign group.  We think a person of ordinary
intelligence would understand that independently
advocating for a cause is different from providing
a service to a group that is advocating for that
cause.

*Id.* at 23-24.[6]  Thus, as subsection (h) makes abundantly clear, the

provision of personnel "to" the FTO does not qualify as material support

when it is undertaken independently and without concerted activity,

and outside the direction and control of the FTO.

Consistent with these principles, at least one court has rejected a

Government effort to prosecute a defendant for providing himself as

---

[6] While the Government disclaimed any allegation that Mr. Al-Azhari attempted to provide a "service" under § 2339B at the hearing, (R. at 47), like "personnel," "service" does not include independent activities.  *See Humanitarian Law Project*, 561 U.S. at 24 ("Moreover, if independent activity in support of a terrorist group could be characterized as a 'service,' the statute's specific exclusion of independent activity in the definition of 'personnel' would not make sense.   Congress would not have prohibited under 'service' what is specifically exempted from prohibition under 'personnel.'   The other types of material support listed in the statute, including 'lodging,' 'weapons,' 'explosives,' and 'transportation,' § 2339A(b)(1), are not forms of support that could be provided independently of a foreign terrorist organization.  We interpret 'service' along the same lines.  Thus, any independent advocacy in which plaintiffs wish to engage is not prohibited by § 2339B.  On the other hand, a person of ordinary intelligence would understand the term 'service' to cover advocacy performed in coordination with, or at the direction of, a foreign terrorist organization.").

"personnel" to conduct an attack outside of the organization's direction
or control, albeit in a different, but closely related, context. *See United
States v. Abu-Jihaad*, 600 F. Supp. 2d 362 (D. Conn. 2009).  In *Abu-
Jihaad*, the defendant consumed jihadist propaganda from an
organization called Azzam.  The defendant even corresponded with the
organization, discussing current events and his thoughts on jihad.
Azzam published a request to send resources to the Taliban, and
exhorted its readers to assist in violent jihad.  Then, the defendant sent
Azzam sensitive information about U.S. naval ship movements and
ammunition.  However, there was no evidence that Azzam requested
the information from Mr. Abu-Jihaad, or coordinated or directed him to
provide it.  600 F. Supp. 2d at 366-75, 380-82, 401-02.

Mr. Abu-Jihaad was charged under § 2239B's companion statute,
§ 2239A.  That statute, which provides the definition of "material
support" for § 2339B, does not include § 2339B(h)'s express limitation
on the word "personnel."  The court explained that, "as an initial
matter, the Court must decide whether the amended definition of
'personnel' in § 2339B applies to § 2339A as well, for even the

Government concedes that if the amended definition in § 2339B applies to § 2339A, the evidence is wanting." *Id*. at 399.  Deciding that the subsection (h) clarification does not apply to § 2339A, the court adopted a definition of "personnel" for § 2339A:  "one who makes resources in the form of individuals (including himself) available, or furnishes individuals (including himself), for the purpose of actively preparing for or carrying out the crimes prohibited by the statute through some form of coordinated action is guilty of violating § 2339A." *Id*. at 400.  Conversely, "[e]ntirely independent action is not sufficient to qualify as being at least 'active in' an organization as required by the definition of personnel." *Id*.

Applying this formulation to the facts before it, the court ruled that the Government's evidence was insufficient. *Id*. at 402.  Noting the lack of any coordination between Azzam and the defendant, the court explained:

> The Government recognizes this gap in the evidence and seeks to get around it by pointing to a general request by Azzam to its readership in November 2000, in which it sought aid for the Taliban by requesting money, gas masks, or battlefield medical services. Of course, Azzam also

> exhorted its readers to assist in violent jihad.  But
> to build a *quid pro quo* or understanding from
> these generalized requests for assistance is more
> than the evidence will bear, even taking all
> reasonable inferences in the light most favorable
> to the Government.

*Id*. at 401-02.

Here, Agent Hazel's testimony narrowed the Government's theory to that of Mr. Al-Azhari attempting to provide "personnel" to ISIS.  (R. at 36-39).  Further, Agent Hazel testified that Mr. Al-Azhari did not attempt to place himself under ISIS's direction or control, and did not attempt to be an organizer, supervisor, or director of operations for ISIS.  (R. at 39-41).  There is no evidence, as there was in *Suarez* and *Augustin*, that Mr. Al-Azhari tried to join the FTO or work under its direction.  Thus, even accepting at face value the Government's evidence as to the historical facts, a straightforward application of subsection (h) demonstrates that there is not probable cause to believe that Mr. Al-Azhari committed the offense charged in the complaint.  He took no substantial step, nor any step at all, to place himself or anyone else under ISIS's direction and control, and did not intend to do so.

The Government's response at the hearing was that ISIS exhorted its followers to commit "lone wolf" attacks, and that is what Mr. Al-Azhari attempted to do:  he "affiliated himself" with ISIS, "consumed [their] directives," and consumed their "propaganda telling people to carry out attacks."  (R. at 54-55).  But this understanding of § 2339B would render subsection (h) meaningless.  As in *Abu-Jihaad*, a listener's consuming propaganda and exhortation does not place the listener under the speaker's "direction or control," even if the listener is persuaded to act.  And, subsection (h) insulates from liability anyone who independently advances the FTO's goals and objectives.  Congress did not simultaneously protect those who independently advance the FTO's goals and punish those who act knowing what the FTO's goals are.  Accordingly, the magistrate judge erred by finding that there is probable cause to believe that Mr. Al-Azhari committed an attempted violation of § 2339B, and in applying the statutory presumption in favor of detention.

## II.  The Government failed to show that no combination of conditions will reasonably assure Mr. Al-Azhari's appearance and the safety of the community.

The Government must show that no combination of conditions will

assure the defendant's appearance by a preponderance of the evidence,

and must show that no combination of conditions will assure the safety

of the community by clear and convincing evidence.  *United States v.*

*Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985).  Even when the statutory

presumption applies, it only shifts the burden of production to the

defendant; the burden of persuasion to show that no combination of

conditions will assure the defendant's appearance and the safety of the

community remains with the Government.  *United States v. King*, 849

F.2d 485, 488 (11th Cir. 1988).  The defendant must only provide some

"quantum" of evidence to rebut the presumption.  *United States v.*

*Hurtado*, 779 F.2d 1467, 1470 n.4, 1479 (11th Cir. 1985).

To determine "whether the defendant has successfully rebutted

the presumption created in subsection (e), the judicial officer is directed

to the four-part catechism of subsection (g)."  *Id.* at 1479.  That

provision directs to the court to consider (1) the nature and

23

circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and circumstances; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).  No factor is dispositive and the court does not tally up factors for one side or the other; the court must consider the "four-part catechism" "overall."  *See United States v. Veres*, No. 3:20-cr-18-J-32JBT, 2020 WL 1042051, at *3 (M.D. Fl. 2020).

The "weight of the evidence" factor predominates in this case. There is little reason for Mr. Al-Azhari to flee if the Government lacks the evidence to make its case.  Mr. Al-Azhari is not subject to § 2339B's penalties if the Government cannot prove beyond a reasonable doubt that he is guilty.  His strongest incentive is to appear at trial and put the Government to its proof.  The Government's evidence is not weighty; it is non-existent as to subsection (h).  Indeed, the Government has specifically disclaimed having the necessary evidence.  (R. at 39-41).

In the face of this dearth of evidence, the "nature and circumstances of the offense charged" and "the nature and seriousness"

of any danger posed by Mr. Al-Azhari wilt away to unimportance.  The

Government has filed a document alleging that Mr. Al-Azhari has

committed a crime, but lacks evidence to support its claim.  The

complaint is not evidence, and an unsupported allegation cannot justify

detaining him on dangerousness grounds.  The filing of a complaint

backed by insufficient evidence is no reason to detain Mr. Al-Azhari for

years while he awaits a jury trial to test that evidence.  *See United*

*States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990) (citation

omitted) ("[A]t some point and under some circumstances, the duration

of pretrial detention becomes unconstitutional.").

Lastly, Mr. Al-Azhari's history and circumstances favor release.

He is 23 years old and has no criminal history–his only "conviction" is

from Saudi Arabia, where he was charged with offenses unknown to

this country and tortured until he pled guilty.  He is a United States

citizen, nearly all of his family members live in this district, and he has

a history of employment here.  He can live with his father, who will act

as a third-party custodian and co-sign an appearance bond.  He has

offered to be subject to home detention with location monitoring, which

will allow the Government to know his every movement.  The Court can
impose a firearms restriction, a search condition, and limitations on his
internet access.  The Court can require him to forfeit his passport.  He
is indigent.  Under these conditions, he would have neither strong
reason nor means to flee, and the Court would be reasonably assured
that he is no danger.  Thus, whether or not the presumption applies, the
Government has failed in its burden of showing that no combination of
conditions would reasonably assure his appearance as required and the
safety of the community.

## CONCLUSION

The Government has filed a complaint against Mr. Al-Azhari
alleging that he attempted to provide material support to an FTO, but
plainly lacks any evidence to overcome the limitation of § 2339B(h).
The magistrate judge erred in applying a presumption of detention, and
consideration of the statutory factors demonstrates that the
Government has met neither its preponderance-of-the-evidence burden
of showing that no conditions will reasonably assure his appearance,

26

nor its clear-and-convincing-evidence burden of showing that that no conditions will assure the safety of the community.

**WHEREFORE** the Defendant, Mr. Al-Azhari, prays this Court will order his release on conditions.

DATED this 10th day of June 2020.

Respectfully submitted,

JAMES T. SKUTHAN
ACTING FEDERAL DEFENDER

*/s* ***Samuel E. Landes***
Samuel E. Landes
D.C. Bar No. 1552625
Assistant Federal Defender
400 North Tampa Street
Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: Samuel_Landes@fd.org

27

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th of June 2020, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

AUSA Patrick Scruggs.

*/s **Samuel E. Landes***
Samuel E. Landes
Assistant Federal Defender